# In the United States Court of Federal Claims

No. 15-587T

(Filed: November 22, 2016)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SUNOCO, INC., | * |
| | * |
| Plaintiff, | * Tax Incentives for Alcohol Fuel |
| | * Blends; Alcohol Fuel Mixture Credit; |
| v. | * 26 U.S.C. §§ 6426, 6427; 26 U.S.C. |
| | * § 87; Excise Tax; Cost of Goods Sold; |
| THE UNITED STATES, | * Highway Trust Fund. |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Kevin Johnson*, Baker Hostetler, LLP, with whom were *A. Christopher Young* and *Robert Fay*, Pepper Hamilton, LLP, Philadelphia, Pennsylvania, for Plaintiff.

*Jason Bergmann*, with whom were *Caroline D. Ciraolo*, Principal Deputy Assistant Attorney General, *David I. Pincus*, Chief, and *Mary M. Abate*, Assistant Chief, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

Plaintiff Sunoco, Inc. brought this action against the Government to recover federal income tax refunds totaling over $300 million. Pending before the Court are (1) the Government's motion for judgment on the pleadings pursuant to Rule 12(c) of the Court of Federal Claims ("RCFC"), and (2) Sunoco's cross-motion for partial summary judgment pursuant to RCFC 56.

This is a case of first impression, and Sunoco's argument turns exclusively on statutory interpretation. As a fuel producer that blends ethanol into its fuel, Sunoco was entitled to claim the Alcohol Fuel Mixture Credit ("Mixture Credit"), set out in § 6426(a)–

(b),[1] against its excise tax liability under § 4081. Sunoco therefore paid less in excise tax than it otherwise would have been required to pay under § 4081 in the tax years 2005–2008. Excise tax payments are includable in a taxpayer's cost of goods sold, and the cost of goods sold reduces the taxpayer's gross income—and, consequently, the taxpayer's income tax liability. Sunoco's interpretation of the Mixture Credit would result in an increased cost of goods sold, which would result in a decreased gross income and lower income tax liability.

The question central to this case is whether a taxpayer like Sunoco must include its net excise tax liability in its cost of goods sold—with a reduction for the Mixture Credit—or whether the taxpayer may include its gross excise tax liability in its cost of goods sold. The latter interpretation (Sunoco's argument) treats the Mixture Credit as a tax-free payment of Sunoco's excise tax liability, and would significantly reduce Sunoco's income tax liability because it would increase Sunoco's cost of goods sold.

The Government argues that Sunoco's interpretation would result in a windfall that Congress did not intend. It cites the Mixture Credit's plain language and legislative history to show that Congress intended to replace the previous excise tax exemption for alcohol mixtures with an "equivalent benefit," rather than a significantly larger combined excise and income tax incentive. Sunoco reads the same statutory language and legislative history to reach the opposite conclusion.

Though the statutes at issue are not crystal clear, the Court ultimately finds the Government's interpretation more persuasive. The Court holds that the Mixture Credit must be treated first as a reduction of the taxpayer's excise tax liability, with any remaining Mixture Credit amount treated as tax-free payment. Had Congress intended, as Sunoco argues, to drastically increase the tax incentives fuel producers receive from blending alcohol into their fuels, one would expect to see at least some inkling of this intent in the legislative history or the Internal Revenue Code. No such inkling appears. Therefore, Sunoco cannot claim that it overpaid its income taxes because it correctly used its net excise taxes paid in calculating its cost of goods sold. The Government's motion for judgment on the pleadings is GRANTED, and Sunoco's cross-motion for partial summary judgment is DENIED.

<u>Background</u>

The few material facts in this case are not in dispute. Sunoco filed its complaint on June 10, 2015, seeking a tax refund of over $300 million for the tax years 2005–2008. <u>See</u> Compl., Dkt. No. 1. In all of the tax years at issue, Sunoco blended ethanol into its fuel

---

[1] Unless otherwise indicated, all references to sections herein refer to the Internal Revenue Code of 1986, as amended (Title 26 of the U.S. Code).

and thereby qualified for the Mixture Credit.  Compl. ¶ 11.  Sunoco thus paid a reduced excise tax and reduced its cost of goods sold by the amount of the Mixture Credit for all of the tax years at issue.  Sunoco deducted its cost of goods sold from its gross income, and paid income taxes accordingly.

On February 12, 2016, the Government moved for judgment on the pleadings pursuant to RCFC 12(c), arguing that the correct tax treatment of the Mixture Credit means Sunoco's claims must fail as a matter of law.  See Dkt. No. 18.  Sunoco responded on April 13, 2016, with a cross-motion for partial summary judgment under RCFC 56 as to the Government's liability.  Dkt. No. 22.  On June 20, 2016, the Government filed its response in opposition to Sunoco's cross-motion, see Dkt. No. 27, and Sunoco filed its reply on July 19, 2016.  See Dkt. No. 33.  The Court heard oral argument on the parties' motions on November 3, 2016.

Additionally, the Court already has decided that the IRS interpretation of the Mixture Credit's tax treatment, as shown in IRS Notice 2015-56, is not entitled to Skidmore deference for purposes of resolving the parties' motions.  See Sunoco, Inc. v. United States, — Fed. Cl. —, 2016 WL 5848909, at *2 (Oct. 6, 2016).  The Court found that no deference was appropriate because (1) the IRS issued Notice 2015-56 after litigation in this case had begun, (2) the Notice cited no authority for its interpretation of the Mixture Credit's tax treatment, and (3) the Notice was inconsistent with prior unofficial IRS advice.  Id. Therefore, while the Court will consider the Government's interpretation of the Mixture Credit's tax treatment, the Court will not give deference to that interpretation.

Discussion

A.    Standard of Review

A party may move for judgment on the pleadings pursuant to RCFC 12(c) "after the pleadings are closed[,] but early enough not to delay trial."  If a party presents and the Court accepts materials outside the pleadings, then the Court must decide the motion as a motion for summary judgment under RCFC 56.  RCFC 12(d).  Sunoco has presented materials outside the pleadings here; however, as shown below, the Court finds that it is possible to resolve the single legal issue on the face of Sunoco's complaint without resorting to factual materials outside the pleadings.  Therefore, the court will decide the pending cross-motions under RCFC 12(c) rather than RCFC 56.

When deciding a motion for judgment on the pleadings under RCFC 12(c), the Court applies substantially the same test that it would on a motion to dismiss for failure to state a claim under RCFC 12(b)(6).  Sikorsky Aircraft Corp. v. United States, 122 Fed. Cl. 711, 719 (2015).  Under RCFC 12(b)(6), a complaint fails to state a claim upon which relief may be granted "when the facts asserted by the claimant do not entitle [the claimant] to a

legal remedy." <u>Briseno v. United States</u>, 83 Fed. Cl. 630, 632 (2008) (citation omitted). The Court also must construe allegations in the complaint favorably to the plaintiff. <u>See Extreme Coatings, Inc. v. United States</u>, 109 Fed. Cl. 450, 453 (2013). Still, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted)).

### B.     Sunoco's Refund Claims Fail as a Matter of Law.

The tax treatment of the Mixture Credit is the sole legal question in this case. To that end, it is helpful to keep a few basic principles of tax law in mind while analyzing Sunoco's claims. First, Sunoco was required to pay excise taxes during the relevant period. Excise taxes are imposed on sellers of commodities like fuel, <u>see</u> <u>Cook v. United States</u>, 86 F.3d 1095, 1098 (Fed. Cir. 1996), <u>cert. denied</u>, 519 U.S. 932 (1996), and are set out in § 4081. When a taxpayer like Sunoco pays its excise taxes, those tax receipts go into the Highway Trust Fund. § 9503(b)(1)(D). The Government uses the Highway Trust Fund to maintain the nation's highways and related infrastructure. <u>See</u> § 9503(c)(1).

Second, a taxpayer's excise taxes under § 4081 also directly impact a taxpayer's gross income (which is defined in § 61) because excise taxes become part of the taxpayer's cost of goods sold. <u>See</u> <u>Mohawk Liquer Corp. v. United States</u>, 324 F.2d 241, 244 (6th Cir. 1963). The taxpayer excludes its cost of goods sold from gross income. <u>Id.</u> With lower gross income comes lower income tax liability. Therefore, one could compare the relationship between excise tax liability and income tax liability to two people on a seesaw: when excise tax liability goes up, income tax liability goes down, and vice versa.

So, if the Mixture Credit is interpreted as a reduction of excise tax liability, then the taxpayer's income tax liability would increase as a result of that reduction. The Government interprets the Mixture Credit in this way. However, if the Mixture Credit does not affect the taxpayer's excise tax liability—as Sunoco argues—then the taxpayer's income tax liability would decrease. Both parties cite the relevant statutes' language, the tax exemption that preceded the Mixture Credit, legislative history, and case law to support their positions. All of these pieces are necessary to evaluate the Mixture Credit's tax treatment, and the Court will address each piece in turn.

### 1.     The Language of the Mixture Credit Statutes Does not Resolve the Parties' Dispute.

The Court first must examine the text of the relevant statutes themselves, and "must construe [the] statute[s], if at all possible, to give effect and meaning to all [their] terms." <u>Splane v. West</u>, 216 F.3d 1058, 1068 (Fed. Cir. 2000) (citation omitted). The dispute in this case centers on §§ 6426(a) and 6427(e).

Section 6426(a) states, in relevant part: "There shall be allowed as a credit . . . against the tax imposed by section 4081 an amount equal to the sum of the credits described in subsections (b), (c), and (e). . . ." Subsection (b) is the Mixture Credit relevant here, and (as noted above) the parties do not dispute that Sunoco qualified for the Mixture Credit.

When a taxpayer's Mixture Credit amount is higher than the taxpayer's § 4081 excise tax liability, the Government pays the difference directly to the taxpayer. This payment mechanism is set out in § 6427(e):

> (1) If any person produces a mixture described in section 6426 in such person's trade or business, the Secretary shall pay (without interest) to such person an amount equal to the alcohol fuel mixture credit . . . with respect to such mixture.
>
>       *      *      *
>
> (3) No amount shall be payable under paragraph (1) or (2) with respect to any mixture or alternative fuel with respect to which an amount is allowed as a credit under section 6426.

Under the Government's interpretation, § 6426(a) describes the Mixture Credit, and §§ 6427(e)(1) and (e)(3) address a situation in which the taxpayer may claim a payment for any Mixture Credit amount that is not first used to offset the taxpayer's excise tax liability. Taken together, the Government argues, these statutes first give the taxpayer a credit against its excise tax liability that operates as a "dollar-for-dollar reduction in the relevant tax liability." Def. Mot. at 11, Dkt. No. 18. Section 6427(e)(1) then directs the Secretary of the Treasury to pay the taxpayer "an amount equal to the [Mixture Credit]," but not, according to Section 6427(e)(3), for any amount that the taxpayer was "allowed as a credit under section 6426." Therefore, the Government agrees that part of the Mixture Credit is a refundable tax-free payment, but only to the extent that the Mixture Credit amount under § 6426(a) exceeds the taxpayer's excise tax liability under § 4081. To summarize, the Government's approach bifurcates the Mixture Credit into (1) a reduction of excise tax liability, and (2) a tax-free cash payment after the taxpayer's entire excise tax liability is reduced to zero by the Mixture Credit.

Sunoco rejects the Government's bifurcation approach to the Mixture Credit. It contends that these statutes, taken together, mean that the Mixture Credit can only be construed as a single tax-free payment of the taxpayer's excise tax liability. It cites the "payment" language in § 6427(e)(1), and argues that § 6427(e)(3) merely describes a "process" by which the taxpayer's excise tax liability and the Government's obligation to

pay the credit first offset each other before resulting in a cash payment to the taxpayer. See Pl. Cross-Mot. at 28–30, Dkt. No. 22.

The statute's language supports both parties' interpretations. First, the phrase "credit against the tax imposed" is not talismanic. Neither party has pointed to a clear definition of the phrase, and the Court is unaware of any such definition. The treatise the Government cites makes clear that the Internal Revenue Code "does not contain a general definition of credit." J.E. Maule, 506-3rd: Tax Credits: Concepts and Calculation, § II.B (BNA 2015). Rather, Congress seems to use the term "credit" to mean either a "subtraction in tax liability" or "amounts that are not subtracted from tax liability, but that instead resemble deductions or that are credits in an accounting sense." Id.

The specific reference to § 4081 as the section against which the Credit is imposed also is not dispositive. The Government argues that the reference means the Mixture Credit must be a reduction in excise tax liability or else the reference would be superfluous; however, as noted below, Congress also could have included this language to make clear that the full excise tax was to be credited to the Highway Trust Fund. Put simply, the phrase "credit against the tax imposed under section 4081" could fit either the Government's or Sunoco's interpretation.

Second, both parties have advanced plausible arguments as to the payment mechanism described in § 6427(e). The language in the statute could describe either (1) a a substantive bifurcation of the Mixture Credit into an excise tax reduction and a cash payment (the Government's view), or (2) a process by which the Mixture Credit first is applied to offset the taxpayer's excise tax liability, with the balance paid out in cash to the taxpayer (Sunoco's view). In sum, the language in the two sections above is unclear, and the Court must use other tools to interpret the Mixture Credit's tax treatment.

2.    The Legislative History Favors the Government's Position.

a.    Congress Created the Mixture Credit to Replenish the Highway Trust Fund.

A clearer picture of the Mixture Credit's tax treatment begins to emerge in its legislative history. Congress enacted the Mixture Credit as part of the American Jobs Creation Act of 2004 ("AJCA"), Pub. L. 108-357, 118 Stat. 1418, 1469, § 301. In doing so, Congress created a new tax incentive that replaced a preexisting excise tax exemption for alcohol fuel mixtures. Before the Mixture Credit, two linked tax incentives existed for fuel producers that blended alcohol into their fuel. First, § 40(a) provided an income tax credit for alcohol fuel blenders (this income tax credit still exists today). Second, § 4081 taxed alcohol fuel mixtures at a lower rate than regular fuels. See H.R. Rep. No. 108-755, at 300 (2004) (Conf. Rep.). A taxpayer was permitted to claim either the income tax credit

or the lower excise tax for alcohol fuel mixtures, but not both.  See id.; § 40(c) (2004).  If a taxpayer claimed the income tax credit under § 40(a), the Code specifically included the credit in the taxpayer's gross income (this also is still true today).  § 87(1).

The AJCA replaced the reduced excise tax rates for alcohol fuel mixtures in § 4081 with a credit to be applied against the excise tax.  In other words, on paper, fuel blenders now pay the full amount of the § 4081 excise tax.  The legislative history confirms that the AJCA "eliminate[d] reduced rates of excise tax on most alcohol-blended fuels and impose[d] the full rate of excise tax."  H.R. Rep. No. 108-755, at 306 (2004) (Conf. Rep.).

And therein lies a key issue in interpreting the Mixture Credit: in reality, the full tax rates were *not* imposed.  In § 6426, Congress created two new credits against the § 4081 excise tax; namely, the Mixture Credit and a credit for biodiesel fuels.  H.R. Rep. No. 108-755, at 306 (2004) (Conf. Rep.).    Under both Sunoco's and the Government's interpretations, the Mixture Credit means the taxpayer itself does not pay the full amount of its excise tax liability; rather, it pays excise taxes that are reduced by the amount of the Mixture Credit.  If the legislative history and the Mixture Credit's practical effect seem contradictory, they are.  In essence, the Mixture Credit amounts to accounting sleight-of-hand. Congress can say the full excise tax is imposed on fuel blenders, but can nevertheless reduce the blenders' tax liability in much the same way it did before.

Why would Congress go to such lengths to create this legal fiction?  As the Government notes, Congress primarily wanted to replenish the Highway Trust Fund.  See Def. Mot. at 14, Dkt. No. 18.  Excise taxes go into the Highway Trust Fund, which is used to maintain the nation's infrastructure.  See H.R. Rep. No. 108-755, at 305 (2004) (Conf. Rep.); § 9503(b)(1).  The Highway Trust Fund understandably became depleted when more of the nation's fuel began to contain ethanol.  More ethanol blends meant that the Government could collect fewer excise taxes on fuel.  Still, cars that use ethanol blends cause the same wear and tear on highways that purely gasoline-powered cars cause.  See H.R. Rep. 108-548, Part I, at 141 (2004).  Therefore, Congress found it appropriate to replenish the Fund by imposing, on paper, the full excise tax rates on fuel blenders.  In reality, however, the Government itself pays part of fuel blenders' excise taxes from the Treasury General Fund in the form of the Mixture Credit.  In other words, the Mixture Credit created an accounting backdoor that allows Congress to shift money from the Treasury General Fund to the Highway Trust Fund.  See H.R. Rep. No. 108-755, at 305 (2004) (Conf. Rep.) ("The provision also authorizes the full amount of fuel taxes to be appropriated to the Highway Trust Fund without reduction for amounts equivalent to the excise tax credits allowed for alcohol fuel mixtures . . . .").  Therefore, it seems clear that

Congress's main aim in passing the Mixture Credit to replace the preexisting lower tax rates for alcohol blends was to replenish the Highway Trust Fund.[2]

Taxpayers like Sunoco are construed as having paid their full excise taxes for purposes of the Highway Trust Fund; however, the legislative history is silent on the Mixture Credit's income tax implications.  At first blush, there are two passages that could support Sunoco's reading of the statute.  First, the Conference Report states:

> In lieu of the reduced excise tax rates, the provision provides that the alcohol mixture credit provided under section 40 may be applied against section 4081 excise tax liability. . .  The credit is treated as a payment of the taxpayer's tax liability received at the time of the taxable event.

H.R. Rep. No. 108-755, at 304 (2004) (Conf. Rep.).  Sunoco argues that the "payment" language shows congressional intent to treat the Mixture Credit as a non-taxable payment, rather than a reduction in excise tax liability.  This is certainly the case from the vantage point of the Highway Trust Fund because of the legal fiction described above; however, the passage also states that the credit must be "applied against" the section 4081 excise tax liability.  At most, then, this passage is neutral on the Mixture Credit's tax treatment because it uses language similar to § 6426(a).  As a result, the Court is inclined to believe that Congress did not attempt to use terms of art when it used phrases such as "applied against" and "payment."

Both Sunoco and the Government also point to a second passage:

> To the extent the alcohol fuel mixture credit exceeds any section 4081 liability of a person, the Secretary is to pay such person an amount equal to the alcohol fuel mixture credit with respect to such mixture.  Thus, if the person has no section 4081 liability, the credit is totally refundable.  These payments are intended to provide an equivalent benefit to replace the partial exemption for fuels to be blended with alcohol and alcohol fuels being repealed by the provision.  Similar rules apply to the biodiesel fuel mixture credit.
>
> If claims for payment are not paid within 45 days, the claim is to be paid with interest.  The provision also provides that in the case of an electronic claim, if such claim is not paid

---

[2] Congress also had other subsidiary aims.  It hoped to reduce fraud by the fuel blenders that took advantage of the lower tax rates, and also hoped to simplify the existing law.  See H.R. Rep. 108-548, Part I, at 141–42 (2004).

within 20 days, the claim is to be paid with interest. If claims are filed electronically, the claimant may make a claim for less than $200. The Secretary is to describe the electronic format for filing claims by December 31, 2004.

H.R. Rep. No. 108-755, at 308 (2004) (Conf. Rep.).

This passage is neutral on the issue in this case at best, and nonsensical at worst. The Government cites the "equivalent benefit" language in this and other similar passages to show that Congress wanted to create a benefit in the Mixture Credit that was essentially the same as the preexisting lower excise tax rates for alcohol fuel mixtures. If this is what Congress meant, then the passage defies common sense. The Mixture Credit and the prior lower excise taxes undeniably create different benefits. Under the prior tax regime, a taxpayer could only claim the lowered excise tax rates if (1) it had excise tax liability, and (2) it satisfied the alcohol fuel mixture requirements in § 4081. In contrast, a taxpayer today may claim the Mixture Credit as long as it satisfies the requirements in § 6426(b). In other words, the current tax regime does not require the taxpayer to have excise tax liability to receive a benefit, but the prior tax regime did. The benefits cannot be "equivalent."[3]

Construing the passage more generously—as Sunoco does—the Court is more inclined to believe Congress meant that payments under § 6427(e)(1) would be made as quickly as refund payments were made under the prior excise tax regime. Under that regime, "[i]f fully taxed gasoline (or other taxable fuel) [was] used to produce a qualified alcohol mixture, the Code permit[ted] the blender to file a claim for a quick excise tax refund." H.R. Rep. No. 108-755, at 302 (2004) (Conf. Rep.) (describing existing law at the time of the Mixture Credit's enactment). Indeed, the above passage contains an entire paragraph that concerns the timing of § 6427(e)(1) payments. Therefore, it is more reasonable to assume Congress meant that taxpayers should receive their cash payments under § 6427(e)(1) with a similarly quick turnaround time.

To summarize, the legislative history shows that, to replenish the Highway Trust Fund, Congress chose to upend the preexisting reduced excise tax rates and replace them with a legal fiction through which the full rates were imposed. However, the legislative history does not make the logical leap Sunoco asks of it because it does not carry the legal fiction applicable to the Highway Trust Fund over to individual alcohol fuel blenders' income tax deductions.

---

[3] The Government also cites the conditional phrase in the above passage—"if the person has no section 4081 liability, the credit is totally refundable"—to show that Congress envisioned a tax-free payment only if the taxpayer's excise tax liability was lower than the amount of the Mixture Credit. The Court is not convinced. This language essentially restates § 6427(e)(1) and (e)(3), and it suffers from the same ambiguity.

b.  <u>The Legislative History Does not Support the Increased Subsidy Called For by Sunoco's Interpretation.</u>

The Conference Report is silent on the—to put it mildly—interesting side-effects that either interpretation of the Mixture Credit creates.   Under the Government's bifurcation approach, any Mixture Credit amount that is used to reduce a taxpayer's excise tax liability becomes subject to income tax, but any Mixture Credit amount that exceeds the taxpayer's excise tax liability is not subject to income tax.  If this seems odd, remember the see-saw described above: any decrease in excise tax liability is mirrored by a corresponding increase in gross income, which is subject to income tax.  This result is puzzling because taxpayers without excise tax liability, who previously received no benefit whatsoever under the lowered excise tax rates for alcohol fuel blenders, now receive the Mixture Credit tax-free.  On the other hand, taxpayers with excise tax liability (like Sunoco), who did receive tax benefits under the prior tax regime, have their Mixture Credits taxed as income.

Sunoco's approach also has consequences.  It would increase the subsidy to alcohol fuel blenders by about thirty-five percent over the subsidy that the preexisting lower excise tax rates conferred.  <u>See</u> Def. Resp. Br. at 10, Dkt. No. 27.  Such a drastic increase would have drastic effects.  Sunoco is only one major alcohol fuel blender in the United States, and it is claiming a refund of over $300 million for four tax years.  Therefore, if Sunoco were entitled to this subsidy, then similarly situated blenders could claim refunds totaling billions of dollars.

Though the Conference Report addresses neither of these effects, the Joint Committee on Taxation computed the Mixture Credit's budgetary effects.  It found that the "excise tax credit (in lieu of reduced tax rate on gasoline) to certain blenders of alcohol fuel mixtures" would produce "No Revenue Effect."  Staff of Joint Comm. on Taxation, <u>Estimated Budget Effects of the Conference Agreement for H.R. 5250, the "American Jobs Creation Act of 2004"</u> (JCX-69-04) at Provision III.A.1 (Comm. Print 2004).  Therefore, while either of the parties' approaches to the Mixture Credit produces an unappetizing outcome, it seems clear that Congress did not believe when it passed the AJCA that it was giving a drastically increased subsidy to alcohol fuel blenders.  Congress also likely did not believe it was giving a benefit to taxpayers who did not qualify for any benefits under the previous tax regime, as this presumably also would have a "net revenue effect."  Still, Sunoco does not contend that the benefits conferred via tax-free payments under § 6427(e)

in any way approach the magnitude of a thirty-five percent subsidy to alcohol fuel blenders. Therefore, the legislative history favors the Government's position.[4]

3.   Analogous Cases Favor the Government's Interpretation.

First, the Court agrees with the Government's argument that the Mixture Credit's effect on a taxpayer's cost of goods sold should resemble the effect of a manufacturer's rebate. A manufacturer's rebate "that a taxpayer receives on goods that it purchased for resale is not, itself, an item of gross income but, instead, is treated as a reduction in the cost of goods sold." Affiliated Foods, Inc. v. Comm'r, 128 T.C. 62, 80 (2007). For example, the IRS once found that "a cash rebate paid to an automobile dealer should be treated as a reduction in the cost of the automobile purchased;" in other words, the automobile dealer could not claim the full cost of the automobile in its cost of goods sold. Rev. Rul. 84-41, 1984-1 C.B. 130 (1984). The Mixture Credit is like a manufacturer's rebate in that it reduces the amount of money the taxpayer actually is required to pay out of its own pocket. This reduction happens in the real world (despite the legal fiction applicable to the Highway Trust Fund), so it logically follows that the reduction should be reflected in the taxpayer's cost of goods sold. Thus, the Mixture Credit, like a manufacturer's rebate, should reduce a taxpayer's cost of goods sold and increase the taxpayer's gross income.

Second, while no case addresses a tax credit identical to the Mixture Credit, cases acknowledge that tax credits may be bifurcated as the Government suggests.[5] For example, in Maines v. Commissioner, 144 T.C. 123 (2015), the Tax Court found that a state's tax credit first reduced the taxpayer's state tax liability before it generated a payment to the taxpayer. See id. at 136. The portion of the credit that reduced the taxpayer's liability was not subject to federal income tax, but the portion the state paid in cash as a refund to the taxpayer was. Id. Similarly, the IRS previously has bifurcated a tax credit according to the credit's function. In Revenue Ruling 79-315, the state tax refund at issue was treated as gross income to the extent it was not "credited against unpaid 1978 tax." 1979-2 C.B.

---

[4] The Court declines to consider Congressional Research Service ("CRS") reports that were issued after Congress enacted the AJCA. The CRS reports are not legislative history; rather, they simply interpret enacted legislation. The Court does not require the CRS reports to ascertain that reasonable people have come to opposite conclusions on the merits of this case.

[5] The Government cites several cases that analyze the deduction a taxpayer may take for state and local taxes. See Def. Mot. at 21–24, Dkt. No. 18; Snyder v. Comm'r, 894 F.2d 1337 (Table) (6th Cir. 1990); Cummings v. United States, 866 F. Supp. 2d 42, 46–49 (D. Mass. 2011). While the Court agrees that these cases illustrate a functional approach to income tax deductions, they are not entirely dispositive. State and local governments impose these taxes, so courts naturally are skeptical when taxpayers try to deduct a portion of state taxes they never actually had to pay. Allowing taxpayers to do this would be to allow a state government to directly manipulate federal income taxation. The situation in this case is different because the same sovereign—the federal government—is responsible for setting out both the relevant taxes and the credits taken against those taxes.

27 (1979).  Functionally, this approach also divides a tax credit into two distinct parts: a reduction of state tax liability (nontaxable) and a cash payment (taxable).  Sunoco rightly notes that these cases involve state law tax credits.  Further, the Mixture Credit produces the opposite of the results in both cases: the refundable part of the Mixture Credit is not taxed, and the part that reduces the taxpayer's excise tax liability is.  Still, Maines and Revenue Ruling 79-315 show that the Tax Court and the IRS have no qualms about bifurcating credits into two parts if the credits' function demands such treatment.  This is a unique case, and no authority cited by either party definitively shows how the Mixture Credit should be treated for tax purposes; however, the above cases involving manufacturers' rebates and bifurcated credits are sufficiently similar to this case to be persuasive.

4.   Canons of Statutory Construction do not Support Sunoco's Argument.

Sunoco cites the well-established construction canon of *expressio unius est exclusio alterius*, or "the expression of the one is the exclusion of the other," to support its case. This maxim means that if Congress includes certain related items in a statute but does not include other items in the same category, it intentionally excludes those other items.  See Ventas, Inc. v. United States, 381 F.3d 1156, 1161 (Fed. Cir. 2004).  This canon, Sunoco argues, applies here because § 87 expressly includes in gross income the income tax credit in § 40(a)—which, like the Mixture Credit, incentivizes blending alcohol into fuel.  Section 87 does not include the Mixture Credit in gross income.  Sunoco argues that Congress intentionally included the § 40(a) income tax credit in gross income, which means that it intentionally excluded the Mixture Credit.

While this argument at first appears persuasive, the Government correctly notes that there was a good reason for Congress to include the § 40(a) income tax credit in gross income.  As shown above, the prior tax regime before the Mixture Credit allowed a taxpayer to take either an income tax credit or reduced excise tax rates, but not both.  Lower excise tax rates meant that a taxpayer's income tax liability would rise if a taxpayer took the excise tax route instead of the income tax credit route.  Therefore, if the income tax credit were not included in gross income, it would have been a better tax incentive than the lower excise tax rates because it would not have increased the taxpayer's income tax liability.  The legislative history clearly states that Congress did not intend this result; rather, it was "necessary to have an amount equivalent to the income tax credit (or refund) includable in income to produce the same net tax effect" as the excise tax rates.  S. Rep. No. 96-394, at 94 & n.16 (1979).  Furthermore, there was no reason for Congress to include the Mixture Credit in § 87 expressly as gross income because any reduction in a taxpayer's excise tax liability necessarily results in an increase in gross income.  Therefore, the Court

finds that Congress did not intentionally exclude the Mixture Credit from gross income by not including it in § 87.[6]

### 5.   The Ambiguity in the Relevant Statutes Counsels Against Allowing Sunoco to Deduct its Gross Excise Tax Liability from Gross Income.

On a fundamental level, courts expect Congress to speak unequivocally when it intends to confer tax benefits on the scale Sunoco suggests.  Tax credits like the Mixture Credit "are a matter of legislative grace, and taxpayers bear the burden of clearly showing that they are entitled to them."  Schumacher v. United States, 931 F.2d 650, 652 (10th Cir. 1991) (citing New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934)).  In fact, when the Supreme Court has considered exemptions from taxation, it has used the "settled principle that exemptions from taxation are not to be implied; they must be unambiguously proved."  United States v. Wells Fargo Bank, 485 U.S. 351, 354 (1988) (citations omitted); see also Bank of Commerce v. Tennessee, 161 U.S. 134, 146 (1896) ("Taxes being the sole means by which sovereignties can maintain their existence, any claim [by a person] to be exempt from the full payment of his share of taxes on any portion of his property must on that account be clearly defined and founded upon plain language.").  Exemptions and tax credits are different, but the real-world effect Sunoco seeks is similar to that of an exemption.  Sunoco wishes to exempt from gross income a portion of its cost of goods sold that it never was required to pay.  There is nothing preventing Congress from conferring such a benefit on Sunoco; however, one would expect Congress to expressly state, either in the legislative history or by statute, that it intended to convey this benefit.  Congress has not done so here.

### Conclusion

Congress created the Mixture Credit because it wanted to replenish the Highway Trust Fund.  The ambiguity at the center of this case is the collateral damage of that effort.  While Sunoco can be forgiven for seeing in that ambiguity an opportunity for a large tax incentive, the Mixture Credit's legislative history, related case law, and policy considerations counsel against accepting Sunoco's interpretation.    Therefore, the Government's motion for judgment on the pleadings is GRANTED, and Sunoco's cross-

---

[6] Sunoco also argues that Congress intentionally excluded the Mixture Credit from gross income by not including it in § 280C.  Section 280C requires a taxpayer to reduce certain deductions by the amount of certain tax credits.  The problem with Sunoco's argument is that § 280C appears in the income tax portion of the Internal Revenue Code, so all of the credits included therein are income tax credits.  There was no reason for Congress to include the Mixture Credit (an excise tax credit) there.

motion for partial summary judgment is DENIED.  The Clerk is directed to dismiss this case with prejudice under RCFC 12(c).[7]  No costs.

      IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge

---

[7]  Dismissal with prejudice is appropriate here because Sunoco's claims rest purely on statutory interpretation, and the Court disagrees with Sunoco's interpretation.  Therefore, Sunoco could not amend its complaint to plead facts that would entitle it to a tax refund.  See Thales Visionix, Inc. v. United States, 122 Fed. Cl. 245, 256 (2015) (dismissing complaint with prejudice on Rule 12(c) motion where Plaintiff's patent claims failed as a matter of law).